# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ex rel. SHALAWN WRIGHT, ) | |
|     Petitioner, ) | |
| ) | |
| v. ) | 06 C 1541 |
| ) | |
| EDDIE JONES, ) | |
|     Respondent. ) | |

## MEMORANDUM AND ORDER

Petitioner Shalawn Wright's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is before the court. For the following reasons, Wright's petition is denied.

## I. Background

The court will presume that the state court's factual determinations are correct for the purposes of habeas review as Wright has not provided clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The court thus adopts the state court's recitation of the facts, and will briefly summarize the key facts which are relevant to Wright's § 2254 petition.

### A. Preliminary Proceedings & Wright's Trial

During a preliminary hearing, Antonio Williams testified that Wright spent the early morning hours of December 23, 1998, at the home of John Bogan, along with Romaine Johnson and Johnson's girlfriend. At approximately 3:00 a.m., he and Wright left Bogan's house to sell cocaine at the corner of 16th Avenue and Madison Street in Maywood, Illinois.

According to Williams, when he and Wright arrived at their destination, they saw two other men standing about a block away. One of these men – Kevin Brown – approached them

and as he pulled on gloves, he held his hands close to Wright's face and yelled, "Are you all strapped up and you all selling drugs on my turf?" Williams then explained that a "strap" is a gun and that he felt that the reference to selling drugs was threatening.

Williams also testified that Wright responded to the "strap" comment by pulling out a gun and shooting Brown two times in the stomach from a distance of approximately two feet. After the shooting, Williams and Wright ran away and returned to Bogan's house. Williams told everyone what had occurred and went to sleep. When he awoke the next morning at approximately 7:00 a.m., he saw Wright removing the Oakland Raiders emblem from the football jacket he had worn during the shooting.

Prior to trial, the State moved to admit Williams's preliminary hearing testimony at trial because he was unavailable to testify since the State could not locate him. The trial court noted that Wright was represented during the preliminary hearing and that counsel had an opportunity to cross-examine Williams. Thus, it admitted Williams's testimony.

Johnson also testified at the preliminary hearing. According to Johnson, he awoke at Bogan's house at approximately 9:30 a.m. on December 23d. He saw Wright, who told him, "I had to give him two of them" and that although he only pulled the trigger once, two shells came out. The court later allowed Johnson's preliminary hearing testimony to be admitted due to Johnson's unavailability and Wright's counsel did not object.

At Wright's bench trial, Bogan testified that he returned home at 4:30 or 5:00 on the morning of the shooting. He asked the people at his house at that time (Williams, Johnson, Johnson's girlfriend, and Wright) if they had heard gunshots and said that he saw police at the corner of 16th and Madison. In response, Wright said that "he popped dude." Bogan explained

that, "He said argument came about you all got straps, so we got straps too; pulled out gun and pulled the trigger. The gun went off twice."

At trial, Lawan Gray, a friend of Brown's, testified that he and Brown went out to sell drugs on the night of the shooting. Brown approached Wright and his companion. Gray heard two shots and saw two men run away, leaving Brown lying on the ground. The police officer at the scene testified that he saw two shell casings on the ground near Brown's body. An evidence technician and Dr. Choi, a forensic pathologist, testified that they saw only one glove on Brown. Dr. Choi also testified that Brown was fatally shot in the left upper chest.

Defense counsel argued that Wright acted in self-defense or that mitigating circumstances justified a conviction for second degree murder. The trial court disagreed and found that Wright was guilty of first degree murder. The court subsequently sentenced Wright to a 35 year term of imprisonment.

B. **Wright's Direct Appeal**

Wright appealed his conviction, arguing: (1) the trial court erred when it admitted the preliminary hearing testimony of witnesses Williams and Johnson because Wright did not have an adequate opportunity to cross-examine these witness[1] and the State failed to show that Johnson was unavailable at trial; (2) trial counsel was ineffective for failing to object to the admission of that testimony; (3) trial counsel was ineffective for failing to explore inconsistencies in Williams's testimony;[2] and (4) trial counsel was ineffective because he

---

[1] Specifically, Wright claims that during the preliminary hearing, his lawyer did not adequately probe Williams and Johnson about their knowledge regarding a prior altercation that may have occurred between Wright and Brown.

[2] The alleged inconsistency is that medical evidence indicated that the shooting was not at close range, but Williams testified that Wright shot Brown twice in the stomach at close range.

allowed the consistent grand jury testimony of witnesses Bogan and Williams to be admitted into evidence.

The Illinois Appellate Court affirmed Wright's conviction, holding that: (1) even if the trial court erred in admitting Williams and Johnson's testimony, any error was harmless; and (2) Wright's counsel was not constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668, 694 (1984), because Wright was not prejudiced by any of his attorney's actions. Wright filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court which raised the same issues he had presented to the Illinois Appellate Court. The Illinois Supreme Court denied Wright's PLA on October 7, 2003.

### C. Wright's State Post-Conviction Proceedings

A bit less than two months later, on December 2, 2003, Wright filed a state post-conviction petition contending that: (1) his trial counsel was ineffective because he (a) failed to properly investigate potential defense witness Ardell Mosley, who would have said that he heard "a volley of shots" fired as he traveled to his home at the time of the shooting; (b) failed to discuss the defense with Wright or show Wright discovery materials; (c) failed to challenge the prosecution's physical evidence and failed to locate physical evidence of potential use to the defense; (d) failed to move to quash petitioner's arrest and suppress any statements made at that time; and (e) failed to properly cross-examine "the State's key witness," whose identity was not specified. Wright also argued that the prosecution withheld "critical exonerating evidence."[3]

On January 23, 2004, the Circuit Court of Cook County denied the petition and found that it was frivolous because it reiterated issues which had already been resolved in Wright's direct

---

[3] The "critical exonerating evidence" appears to relate to shells recovered from the location of the shooting.

appeal. Wright appealed, asserting that the circuit court erred when it dismissed his post-conviction petition based on res judicata because res judicata is an improper basis for dismissal at the first stage of post-conviction proceedings. Alternatively, Wright argued that even if res judicata was applicable, it did not bar his claims because they had not been decided in his direct appeal.

The Illinois Appellate Court affirmed, holding that: (1) Wright's post-conviction petition was properly dismissed because the issues he raised could have been adjudicated upon direct appeal; and (2) Wright's claims were frivolous and patently without merit. Wright filed a PLA repeating the arguments presented to the Illinois Appellate Court in his collateral appeal. The Illinois Supreme Court denied Wright's PLA on January 25, 2006.

### D. Wright's § 2254 Petition

On March 20, 2006, Wright filed a federal petition for writ of habeas corpus under 28 U.S.C. § 2254, arguing that: (1) his trial was fundamentally unfair because the court improperly admitted Williams and Johnson's preliminary hearing testimony; (2) his trial counsel was ineffective because he (a) allowed grand jury testimony of state witnesses to be admitted into evidence, (b) failed to object to the improper admission of Williams and Johnson's testimony, (c) failed to investigate inconsistencies in Williams's testimony, (d) failed to investigate potential witness Mosley, (e) failed to communicate with Wright regarding his defense and did not give Wright discovery material, (f) failed to challenge the State's physical evidence or locate physical evidence of potential use to the defense, and (g) failed to move to quash petitioner's arrest or suppress any statements made at that time; and (3) the State failed to give "critical exonerating evidence" to him.

## II. Discussion

### A. Threshold Matters

The court will begin by summarizing the rules governing exhaustion and procedural default and by recapping the standard of review that guides this court in resolving Wright's § 2254 petition.

#### 1. Exhaustion and Procedural Default

Before this court may reach the merits of Wright's federal habeas claims, it must consider whether he has exhausted his state remedies and avoided procedural default under Illinois law. *See Mahaffey v. Schomig*, 294 F.3d 907, 914-15 (7th Cir. 2002).

##### a. Exhaustion of State Court Remedies

To exhaust state court remedies, a petitioner must give the state courts an opportunity to act on each of his claims before he presents them to a federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). State remedies are exhausted when they are presented to the state's highest court for a ruling on the merits or when no means of pursuing review remain available. *Boerckel*, 526 U.S. at 844-45, 847; 28 U.S.C. § 2254(c). Here, Wright has exhausted his state court remedies because no state court relief is available to him at this stage in the proceedings.

##### b. Procedural Default

Procedural default occurs when a petitioner fails to comply with state procedural rules. *Mahaffey*, 294 F.3d at 915. This occurs when the petitioner fails to pursue all appeals required by state law, *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), or fails to fully and fairly present his federal claims to the state court, *Boerckel*, 526 U.S. at 844. It also occurs when the state court did not address a federal claim because the petitioner failed to satisfy an independent and adequate state procedural requirement, *Stewart v. Smith*, 536 U.S. 856 (2002). If an Illinois

appellate court finds that a claim is forfeited, that holding constitutes an independent and adequate state ground. *Rodriquez v. McAdory*, 318 F.3d 733, 735 (7th Cir.2003).

Nevertheless, this court may still reach the merits of a procedurally defaulted claim if the petitioner establishes either cause for his failure to follow a rule of state procedure and actual prejudice, or that the default will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). To establish a fundamental miscarriage of justice, the petitioner must present new and convincing evidence of his innocence by showing that it is more likely than not that no reasonable juror would convict him in light of the new evidence. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### 2. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). In *Williams,* the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively"

appellate court finds that a claim is forfeited, that holding constitutes an independent and adequate state ground. *Rodriquez v. McAdory*, 318 F.3d 733, 735 (7th Cir.2003).

Nevertheless, this court may still reach the merits of a procedurally defaulted claim if the petitioner establishes either cause for his failure to follow a rule of state procedure and actual prejudice, or that the default will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). To establish a fundamental miscarriage of justice, the petitioner must present new and convincing evidence of his innocence by showing that it is more likely than not that no reasonable juror would convict him in light of the new evidence. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### 2. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). In *Williams,* the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively"

unreasonable. *See Lockyer v. Andrade,* 123 S.Ct. 1166, 1174 (2003) (unreasonable application more than incorrect or erroneous). In order to be considered unreasonable under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Searcy v. Jaimet,* 332 F.3d 1081, 1089 (7th Cir. 2003) (decision need not be well reasoned or fully reasoned and is reasonable if one of several equally plausible outcomes); *Schultz v. Page,* 313 F.3d 1010, 1015 (7th Cir. 2002) (reasonable state court decision must be minimally consistent with facts and circumstances of the case).

  **B.** **Wright's Claims**

    **1.** **Counsel's Failure to Investigate, Communicate, Provide Discovery Materials, Challenge Physical Evidence, or File a Motion to Quash and the State's Failure to Provide "Critical Exonerating Evidence"**

The respondent argues that a number of Wright's ineffective assistance claims (that his counsel failed to investigate potential witness Mosley, failed to communicate with Wright regarding his defense or give Wright discovery material, failed to challenge the State's physical evidence or locate physical evidence of potential use to the defense, and failed to move to quash Wright's arrest or suppress any statements made at that time) and his claim based on the State's failure to provide "critical exonerating evidence" are procedurally defaulted because the Illinois state courts rejected these claims based on independent and adequate state law grounds.

Wright raised the above arguments in his state post-conviction petition, which the trial court dismissed as frivolous and patently without merit. The Illinois Appellate Court found that these contentions could have been raised on direct appeal because they did not rely on facts outside the trial record. *People v. Wright*, No. 1-04-2644 at 7 (Ill. App. Nov. 17, 2005) (unpublished order). In addition, the Illinois Appellate Court noted that in violation of state law,

725 ILCS § 5/122-2, Wright had failed to provide "affidavits, records, or other evidence supporting [his] allegations" or explain why he did not submit these materials. *Id*. The Illinois Appellate Court thus concluded that Wright's ineffective assistance claims were barred by res judicata (to the extent that they overlapped with the ineffective assistance claims presented in his direct appeal) or forfeited (to the extent that they were added at the post-conviction petition stage but based on evidence within the trial record). *Id*.

"When the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground, federal habeas review of the claim is foreclosed." *Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005). In other words, when a petitioner fails to comply with a state procedural rule and the state court relies on that procedural default and refrains from reaching the merits of the federal claim, that claim is procedurally defaulted. *See id*. at 991-92, *citing Coleman v. Thompson*, 501 U.S. 772, 729-30 (1991). With respect to the adequacy of the state law ground, "[s]tate court decisions are not adequate to bar federal habeas review unless they rest upon firmly established and regularly followed state practice." *Franklin v. Gilmore*, 188 F.3d 877, 882 (7th Cir. 1999). In Illinois, issues which could have been presented on direct appeal but were not are deemed forfeited, *id*. at 883, and the failure to support a claim with the affidavit required by § 122-2 also leads to forfeiture, *U.S. ex rel. Edwards v. Sternes*, No. 04 C 1610, 2005 WL 3447773 at *3 (N.D. Ill. Dec. 13, 2005).

Here, Wright's failure to present certain claims properly as part of his direct appeal acts as an independent and adequate state law ground which bars federal habeas review. *See Franklin v. Gilmore*, 188 F.3d at 883. In addition, his failure to follow state law procedure in presenting these claims in his post-conviction petition is a separate and additional independent and adequate

state law ground barring federal habeas review. *See U.S. ex rel. Edwards v. Sternes*, 2005 WL 3447773 at *3.

A federal court may not grant relief on a procedurally defaulted claim unless the petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. at 750. Although Wright does not contend that cause and prejudice or the fundamental miscarriage of justice exceptions excuse his default, the court will nevertheless consider whether these exceptions can help him.

Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 282 (1999). Here, Wright failed to properly follow state procedural rules. Nothing in the record before the court indicates that an objective factor prevented him from doing so. Thus, cause does not excuse his default. Moreover, while Wright does not contend that his counsel on direct appeal was ineffective for failing to raise the defaulted arguments, an allegation of ineffective assistance of counsel is not, by itself, enough to establish prejudice. *See Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir. 1998). Thus, neither cause nor prejudice exists.

The fundamental miscarriage of justice exception is also inapplicable because "this relief is limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). To show "actual innocence," a petitioner must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him. *Id*. Wright's petition, as well as the state court pleadings submitted to the court,

do not contain any substantiated allegations of actual innocence. Indeed, as the Illinois Appellate Court noted:

> [Wright's] defense is that he shot Brown in self-defense. However, the record is devoid of <u>any</u> evidence which suggests that [Wright] justifiably killed Brown in self-defense or that there were mitigating circumstances which would justify a conviction for a lesser offense [*e.g.*, second degree murder].
>
> * * *
>
> Here, the evidence only shows that Brown approached [Wright] and that a conversation of some sort ensued between the men. The conversation may be characterized as an argument, but the exact nature of the argument is not clear from the record. At best, Brown may have said that he had a gun and asked [Wright] about selling drugs and also possessing a gun. That is it . . . . The evidence does not show that Brown made an attempt to physically harm [Wright] . . . . There is no evidence that Brown threatened to physically harm [Wright]. There is no evidence that Brown threatened to use a gun. There is some evidence that Brown may have been putting on a glove at the time of the occurrence. However, this is irrelevant because it does not show that Brown was acting in a way which threatened Wright's life or threatened great bodily harm. Instead, the evidence shows that [Wright] had a weapon and that he initiated the use of force. Here, there is no evidence of any mitigating factors to support anything other than a conviction for first degree murder.

*People v. Wright*, No. 1-04-244 at 7, 10 (Ill. App. June 6, 2003) (unpublished order) (emphasis in original).

Accordingly, the court concludes that the following claims are procedurally defaulted: (1) Wright's claim that his counsel was ineffective due to his (a) failure to investigate potential witness Mosley, (b) failure to communicate with Wright regarding his defense or give Wright discovery material, (c) failure to challenge the State's physical evidence or locate physical evidence of potential use to the defense, and (d) failure to move to quash Wright's arrest or suppress any statements made at that time); and (2) his claim based on the State's failure to provide "critical exonerating evidence."

### 2. Claims Relating to Williams and Johnson

Wright next challenges the admission of Williams and Johnson's preliminary hearing testimony, asserting that the admission of this testimony prevented him from receiving a fair trial. In his direct appeal, Wright argued that he did not have an adequate opportunity to cross-examine these witnesses at the preliminary hearing as all of the trial evidence (including the medical examiner and evidence technician's reports) was not available at the preliminary hearing stage. In addition, Wright contended that Johnson's testimony should not have been admitted because the State failed to adequately show that Johnson was unavailable and failed to use due diligence to locate Johnson. *People v. Wright*, No. 1-04-244 at 5.

The Illinois Appellate Court found that Wright forfeited these arguments by failing to raise them in a post-trial motion. *Id*. It then reviewed the arguments under the plain error doctrine and held that Wright was not entitled to relief. *Id*. at 5-9; *see also* Illinois Supreme Court Rule 615(a) ("[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court"). Specifically, it held that the trial court had not abused its discretion in admitting the testimony. *People v. Wright*, No. 1-04-244 at 6. Alternatively, it held that even if the testimony should have been excluded, any error was harmless because no evidence in the record supported Wright's claim that he shot Brown in self-defense. *Id*. at 7. Wright does not and cannot contend that the Illinois Appellate Court's application of the plain error rule is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

The court's analysis of these claims ends with reviewing the state court's findings under the plain error doctrine, as Wright has procedurally defaulted any chance of obtaining a more searching review. *See Miranda v. Leibach*, 394 F.3d 984, 991-92 (7th Cir. 2005). Specifically,

the Seventh Circuit has recently held that "Illinois law requires a convicted defendant to include any and all claims of error in a post-trial motion for a new trial" and that "[t]he failure to comply with this requirement amounts to a waiver of the claim." *Id*. at 992.  Furthermore, the Illinois Appellate Court's review of an otherwise forfeited issue under the plain error doctrine does not mean that the court has reached the merits and thus overlooked a defendant's failure to comply with state procedural rules.  *Id*. (plain error analysis does not mean that the state court has declined to rely on an independent and adequate state ground).

Thus, the court turns to whether the Illinois Appellate Court's application of the plain error rule entitles Wright to habeas relief.  For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict."  *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  Here, as the Illinois Appellate Court observed, even if the testimony should have been excluded, any error was harmless because no evidence supported Wright's claim that he shot Brown in self-defense.  Without the testimony from the preliminary hearing, Wright was left with evidence showing that Brown received fatal gunshot wounds in the stomach from Wright's gun plus Bogan's testimony that Wright told him that "he popped dude" and that "[Wright] said argument came about you all got straps, so we got straps too; pulled out gun and pulled the trigger.  The gun went off twice."

On the other hand, the preliminary hearing testimony presented a fuller picture of the shooting that could have supported an inference (which the trier of fact did not ultimately make) that Brown may have partially provoked the shooting, since Williams testified that Brown put his hand in Wright's face when he said, "Are you all strapped up and you all selling drugs on my turf?"  Thus, the preliminary hearing testimony was either cumulative or potentially helpful to

the defense. This means that it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. at 637. Moreover, for the reasons discussed above in connection with Wright's other procedurally barred claims, Wright has not shown cause or prejudice to excuse his default, counsel's failure to raise these claims in a post-trial motion is not enough to satisfy the prejudice prong, and the actual innocence exception is clearly inapplicable in this case.

### 3. Ineffective Assistance

Wright claims that he was denied effective assistance of counsel because trial counsel allowed grand jury testimony to be admitted into evidence, failed to object to the admission of Williams and Johnson's testimony, failed to investigate inconsistencies in Williams's testimony, and failed to adequately explore William and Johnson's knowledge about a possible prior altercation that may have occurred between Wright and Brown. Counsel's representation is constitutionally ineffective if it fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). If a defendant fails to satisfy one of the *Strickland* prongs, the court's inquiry under *Strickland* ends. *See id*. at 697; *see also Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2002).

To be entitled to habeas relief, Wright must establish that the state court's decision addressing his ineffective assistance claim was contrary to, or an unreasonable application of, *Strickland*. *See* 28 U.S.C. §2254(d). The Illinois Appellate Court correctly identified *Strickland* as the controlling authority. See *People v. Wright*, No. 1-04-244 at 12-13. It also cited *People v.*

*Albanese*, 104 Ill.2d 504 (Ill. 1984), which follows *Strickland*. It then held that Wright was not prejudiced by his attorney's actions because:

> Here, [Wright] was not denied effective assistance of counsel because he cannot satisfy the second prong of Strickland and show that he was prejudiced by his attorney's actions. [Wright] cannot show that but for his attorney's actions, he would have been found not guilty. When only the evidence given at trial by Bogan of [Wright's] admission that he shot the victim twice is taken into consideration, [Wright] failed to show that he shot Brown in self-defense. . . . Defense counsel obviously needed more helpful details to paint a self-defense picture in this case. By allowing in both the preliminary hearing and grand jury testimony the record shows that Brown approached [Wright], that Brown put his hand in [Wright's] face, that Brown yelled "you got straps, so we got straps too," that [Wright] was selling drugs on Brown's turf and that Brown was putting on a glove. Therefore, it may well have been trial strategy of defense counsel to let it all in since this was a bench trial.

*People v. Wright*, No. 1-04-244 at 12-13.

With respect to the grand jury testimony and preliminary hearing testimony, the Illinois Appellate Court correctly noted that other than this testimony, the evidence presented at trial did not support a self-defense theory. By allowing in testimony that Wright now says should have been excluded, Wright's lawyer enabled his client to state a colorable claim of self-defense. Testimony that Brown approached Wright, put his hand in Wright's face, yelled "you got straps, so we got straps too," and Wright was impinging on Brown's drug-selling turf helped advance that theory. On the other hand, the other testimony at trial, including Wright's two confessions that he "popped" Brown, were completely unhelpful to his self-defense theory.

Wright also contends that his lawyer failed to adequately probe "inconsistencies in Williams [sic] testimony." Petition at 12.[4] According to Wright, medical evidence showed that Brown was shot in the chest and left shoulder, while Williams testified that Brown was shot

---

[4] Wright's arguments in his § 2254 petition as to this issue are, at best, extremely sketchy. Because the court is construing Wright's pro se petition broadly, it will assume that he intends to raise the same arguments that he presented in his direct appeal. *See* Wright's Appellate Brief on Direct Appeal, Respondent's Exh. A at 34-36.

twice in the stomach. Wright also contends that powder burn evidence and the distance between the casings and Brown's body shows that Brown was not shot at close range, while Williams testified that Brown was shot from a distance of approximately two feet. Wright asserts that his lawyer did not explore these inconsistencies enough in his cross-examination.

With respect to counsel's alleged failure to address alleged inconsistencies about the range at which Brown was shot, the Illinois Appellate Court found generally that Wright's ineffective assistance claims were meritless under *Strickland* and did not specifically address this claim. Despite the lack of insight as to the basis of the state court's ruling, this ruling is properly before the court because Wright clearly articulated this argument in the state court proceedings. *See Wilkinson v. Cowan*, 231 F.3d 347, 352 (7th Cir. 2000) (the state appellate court implicitly reached the merits of all issues raised in the petitioner's post-conviction petition even though it did not identify or discuss all of the petitioner's claims in its order).

In response, the respondent has provided portions of the trial transcript showing that Wright's lawyer cross-examined Williams in depth about the shooting, Respondent's Exh. R, and questioned the State's medical expert regarding the lack of evidence of close-range firing and the location of the gunshot wounds, Respondent's Ex. P. Thus, Wright's contention that his lawyer did not attempt to adduce evidence to call Williams' testimony into question is incorrect.

Attorneys have "wide latitude . . . in making tactical decisions[,]" so to obtain habeas relief, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. at 689. Wright has not explained how counsel's decision to explore the distance at which the gun was shot with the expert, as opposed to questioning lay witness Williams at length after he testified that Wright shot Brown in the stomach twice at close range, was unreasonable and

prejudicial. *See Strickland*, 466 U.S. at 689 (the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy).

In any event, the range of the fatal gunshot is beside the point. Wright does not claim that someone else shot Brown but rather that he shot Brown in self-defense. Moreover, Bogan also testified that Wright told him that he shot Brown twice. Thus, Williams's testimony about the shooting was not the only evidence indicating that Wright shot Brown. Moreover, as discussed above, Williams's testimony generally supported Wright's self-defense theory so counsel had to walk a fine line between crediting Williams's testimony about the events leading up to the shooting and discrediting Williams's description of the actual shooting. But this is too fine an analysis, as the court must focus on whether the Illinois Appellate Court applied *Strickland* unreasonably when it rejected Wright's claim. The court finds that it did not, as its decision that counsel's performance vis-a-vis Williams is well within the boundaries of permissible differences of opinion. *See Hardaway v. Young*, 302 F.3d at 762.

This brings the court to Wright's final ineffective assistance claim: that his lawyer was ineffective because he failed to adequately explore William and Johnson's knowledge about a possible prior altercation that may have occurred between Wright and Brown. In his brief filed with the Illinois Appellate Court on direct appeal, Wright hypothesized that a prior altercation between Williams, Wright, and unknown individuals was in fact between Williams, Wright, and Brown. He then posited that the alleged altercation explained the later shooting because it showed that Wright was reasonably provoked into shooting Brown in self-defense. *See* Respondent's Exh. A at 35.

The Illinois Appellate Court found generally that Wright's ineffective assistance claims were meritless under *Strickland* and did not specifically address this claim. The respondent has

provided portions of the trial transcript addressing this issue. *See* Respondent's Exh. Q & R. According to the transcripts, defense counsel attempted to question Johnson regarding the altercation, but the court repeatedly sustained objections. Respondent's Exh. Q at 288. Defense counsel also asked Williams about the alleged altercation, but Williams denied that he "had been in a fight with some niggers" or that he had ever told anyone that he had been in such a fight. *See* Respondent's Exh. R at 120. This testimony appears to refer to the alleged altercation between Williams, Wright, and Brown. Since defense counsel was unable to question Johnson and Williams denied that the altercation had occurred, it is unclear what else defense counsel could have done.

In any event, speculation is insufficient to sustain a claim that counsel rendered ineffective assistance. *U.S. v. Weaver*, 882 F.2d 1128, 1138-39 (7th Cir. 1989). Moreover, to make a sufficient showing on *Strickland*'s prejudice prong, Wright must show a reasonable probability that but for counsel's shortcomings, the proceeding would have had a different result. *See, e.g., United States v. Traeger*, 289 F.3d 461, 470 (7th Cir. 2002). A defendant's conjecture that a different outcome would have been possible if an attorney had acted differently does not displace the heavy presumption that counsel made reasonable tactical decisions in carrying out his representation. *Id.* at 471.

Wright has provided nothing more than speculation that evidence of a possible prior altercation would have shown that he acted in self-defense in subsequently shooting Brown when Brown was yelling at him but not physically threatening him. The Illinois Appellate Court, in contrast, held that counsel's representation satisfied the Sixth Amendment and that the potential altercation evidence would not have affected the guilty verdict. This is reasonable, as even if counsel had somehow impeached Williams as to the supposed altercation, it is wishful thinking

on Wright's part to assume that the trier of fact would have discounted all of this other testimony. And even if this had occurred, substantial additional evidence supported a finding of first degree murder, including Wright's confessions to Bogan and Johnson. Thus, the state court's rejection of Wright's ineffective assistance claim based on the alleged prior altercation is consistent with facts and circumstances of the case. This means that it is not contrary to, or an unreasonable application of, *Strickland*. *See generally Schultz v. Page,* 313 F.3d at 1015.

### III. Conclusion

For the above reasons, Wright's § 2254 petition [1-1 & 11-1] is denied.

DATE: September 11, 2006

_____
Blanche M. Manning
United States District Court Judge